STATE of Indiana, Appellant
(Plaintiff below),

v.

Homer CULP and Rex Bouse, Appellees
(Defendants below).

No. 2–981A330.

Court of Appeals of Indiana,
Second District.

April 12, 1982.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant.

David A. Feeback, Edris, Brown & Johnson, Bluffton, for appellees.

SHIELDS, Judge.

The State of Indiana (State) appeals pursuant to I.C. 35–1–47–2 (Burns Code Ed., Repl. 1979) from an order of the trial court granting appellees Homer Culp and Rex Bouse's motion to correct errors in a prosecution for public intoxication. I.C. 7.1–5–1–3 (Burns Code Ed., Supp.1981).[1]

We affirm.

On February 17, 1981 several police officers were summoned to a disturbance at an apartment house in Bluffton, Indiana. When the officers arrived at the scene they observed two tenants, Culp and Bouse, inside the apartment house seated near the top of a stairway leading to the second floor of the building. Both men were belligerent and appeared intoxicated. They were eventually placed under arrest for public intoxication.[2]

At a trial before the court Culp and Bouse were found guilty of public intoxication and duly sentenced. A motion to correct errors followed. After a hearing the trial court granted the motion, vacated the judgment of conviction, and entered a finding of not guilty and judgment of acquittal for both charges of public intoxication. In granting the motion the trial court concluded Culp and Bouse, while intoxicated, were not in a "public place or place of public resort" within the meaning of I.C. 7.1–5–1–3.

The sole issue presented on appeal is whether the enclosed common hallway and stairway area of an apartment house is a "public place or place of public resort" within the meaning of our public intoxication statute.[3] This is a matter of first impression in this jurisdiction.

---

1. I.C. 7.1–5–1–3 provides:
   "It is a class B misdemeanor for a person to be in a public place or a place of public resort in a state of intoxication."

2. Appellee Bouse was also arrested and subsequently convicted for disorderly conduct. That conviction, however, is not being challenged on appeal.

3. In 1935 the term "or a place of public resort" was added to our public intoxication statute by Acts 1935, ch. 226 § 31(11), p. 1155. In *Cornell v. State*, (1980) Ind.App., 398 N.E.2d 1333, 1335 n.3 this court stated:

The State contends the common areas of the building are accessible to the several tenants and their guests, and to those providing services to the apartment dwellers. It further notes the manager of the building maintained no security system to restrict the general public from entering upon the common areas of the apartment house. Because these areas are so readily accessible, the State argues the appellees' behavior is precisely the kind of conduct the public intoxication statute seeks to proscribe. It cites *State v. Siever*, (1889) 117 Ind. 338, 20 N.E. 245, where our supreme court stated:

"The purpose of the law is to protect the public from the annoyances and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition."

The State also relies upon *Heichelbech v. State*, (1972) 258 Ind. 334, 281 N.E.2d 102, where the supreme court held, albeit in *dicta*, an automobile service station is a business establishment open to the public and, although private property, it is a public place as contemplated within the statute.

■ We acknowledge in certain instances private property may qualify as a "public place or place of public resort." A business establishment, for example, which impliedly invites consumers to enter upon its premises may, under proper circumstances, be a "public place" within the ambit of the statute. Nevertheless, the weight of authority in Indiana leads to the inexorable conclusion the enclosed common areas of an apartment dwelling are not public areas or places of public resort within the meaning of our public intoxication statute.[4]

■ It is well established in this state that a private residence, including the private grounds directly outside of it, is not a public place. *State v. Sowers*, (1876) 52 Ind. 311; *Cornell v. State*, (1980) Ind.App., 398 N.E.2d 1333, 1339 (Buchanan, C. J. dissenting opinion) (front yard of a private residence is not a public place). Nor does a

"Although no Indiana decisions have defined 'a place of public resort,' several early decisions defined a public place as: 'A public place is one where all persons have a right to go.' (Citations omitted.) In this regard, it does not appear as though the legislature's inclusion of 'or a place of public resort' has changed prior case law considering the question of what constitutes a public place. Rather, it appears as though the additional language merely clarifies that a public place encompasses places the public, *i.e.*, all persons, have a right of frequent assembly. *Cf.* BLACK'S LAW DICTIONARY 1475 (Rev. 4th ed. 1976) (defines 'resort' as, '[a] place of frequent assembly, a haunt.'); Websters Third New International Dictionary 1934 (Unabridged ed. 1976) (defines 'resort' as, *inter alia*, 'a place to which one betakes himself or persons go habitually; a place of frequent assembly.').

"Indeed, an early appellate court decision, by *dicta*, recognized a public place encompasses places where all persons have a right of frequent assembly, *i.e.*, a place of public resort. *See State v. Tincher* [21 Ind.App. 142, 51 N.E. 943], *supra*, wherein the Court of Appeals quotes the following statement from *Parker v. State*, 26 Tex. 204: 'A 'public place' does not mean a place devoted solely to the uses of the public; but it means a place which is in point of fact public, as distinguished from private,—*a place that is visited by many persons, and usually accessible to the neighboring public*. (em-

phasis added). 21 Ind.App. at 144, 51 N.E. at 944.'

"Further evidence prior case law considering the question of what constitutes a public place has not been changed by the inclusion of 'or a place of public resort' is evidenced by the fact that the more recent decisions continue to speak in terms 'a public place' rather than 'a public place or a place of public resort.' *See e.g. Miles v. State*, (1966) 247 Ind. 423, 216 N.E.2d 847; *Wilhite v. State*, (1947) 225 Ind. 45, 71 N.E.2d 925."

4. We do not imply apartment dwellers and their guests are without protection from the annoyances and inconveniences which accompany offensive behavior in the enclosed common hallways of an apartment building. Quite to the contrary, Indiana's disorderly conduct statute proscribes the type of belligerent conduct alleged in the instant case. I.C. 35–45–1–3 (Burns Code Ed., Repl. 1979) provides:

"Disorderly conduct.—A person who recklessly, knowingly or intentionally:
(1) Engages in fighting or in tumultuous conduct;
(2) Makes unreasonable noise and continues to do so after being asked to stop;
(3) Disrupts a lawful assembly of persons; or
(4) Obstructs vehicular or pedestrian traffic; commits disorderly conduct, a class B misdemeanor."

residence lose its private character merely because a number of people may congregate there with or without invitation. As this court previously stated:

> "A private residence is not a public place, in any sense of the term, and the mere suggestion of the fact is a sufficient argument to support it. We are unable to see how a private residence can be made a public place by a number of persons in the neighborhood gathering there, with or without invitation, to pass an evening in social intercourse and innocent amusement. Whether a place is public or not cannot be determined by the number of people who may gather there for some legitimate purpose, but by the place itself. Nor can it be determined by people freely and voluntarily congregating at their own pleasure, or by the invitation of others."

*State v. Tincher,* (1898) 21 Ind.App. 142, 51 N.E. 943. In addition, it has been held that a private road or way owned by a private corporation is not a public place for purposes of the public intoxication statute. *State v. Moriarty,* (1881) 74 Ind. 103. *See also Cornell,* (vehicle parked 20 feet from public road in lane entering private field is not in public place).

■ The fact a private residence in the instant case has been converted into an apartment house does not render it or its common areas a place of public resort. It is axiomatic in Indiana that a house used for a private residence does not lose its private character merely by the fact a number of people may gather there or have access to it. This applies with equal vigor to multi-

ple unit dwellings. Unlike business enterprises, members of the public at large are not impliedly invited or encouraged to enter the common areas of an apartment house except when they have personal and private matters to conduct with the tenants.[5]

We thus conclude the enclosed hallway and stairway areas of an apartment house are not public places within the context of our public intoxication statute. The trial court therefore properly granted appellees' motion to correct errors and entered a finding of not guilty and judgment of acquittal.

Judgment affirmed.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents, with separate opinion.

BUCHANAN, Chief Judge, dissenting.

I dissent, because the hallway of an apartment building is a "public place" within the meaning of Indiana's public intoxication statute. To conclude otherwise is to uproot centuries of statutory and common law. The great Cardozo said, "What has once been settled by a precedent will not be unsettled overnight, for certainty and uniformity are gains not lightly to be sacrificed."[1]

Our public intoxication statute is the evolutionary product of laws enacted over two thousand years ago.[2] A more recent precursor of modern public intoxication laws, whether classified as statutory or common law, is a statute enacted by England's Par-

---

5. The State cites us to *People v. Perez,* (1976) 64 Cal.App.3d 297, 134 Cal.Rep. 338, a California Court of Appeals case which determined a hallway of an apartment building to be a public place within the context of its public intoxication statute. While the California decision is worthy of our attention, its applicability in the instant case is limited by the fact that jurisdiction has interpreted the term "public place" much more expansively than Indiana. *See People v. Olson,* (1971) 18 Cal.App.3d 592, 96 Cal.Rptr. 132 (area outside private residence including lawn, driveway, and front porch is public place).

1. Benjamin Cardozo, The Paradoxes of Legal Science (1928).

2. "Consumption of intoxicating liquor, and efforts to control anti-social results are well-nigh universal phenomena. From the laws of the ancient Hebrews and the discourses of the Greek philosophers to the Anglo-Saxon dooms, and down to the present time, control of the harmful social effects of drunkenness has been a matter of public concern." Hall, *Drunkenness as a Criminal Offense,* 32 J.Crim.L. & Criminology 297, 297 (1941–1942) (footnotes omitted) [hereinafter cited as Hall, *Drunkenness as a Criminal Offense*].

liament in 1606.[3] The penalties under that statute were a fine and commitment to the stocks for six hours, penalties which led Blackstone to conclude that the statute "presumes the offender will have regained his senses, and not be liable to do mischief to his neighbors."[4] "This comment on the underlying purpose of this statute is important [because] [i]t is not the *drunkenness* but the *injury to other persons*, committed under the influence of alcohol that is relevant in law." Hall, *Drunkenness as a Criminal Offense, supra* at 297–98; Comment, *The Law of Public Drunkenness*, 34 Tenn.L. Rev. 490, 490–91 (1967); R. Perkins, Criminal Law 888–89 (2d ed. 1969)

Statutes descending from this 17th century English law have preserved the distinction between punishing intoxication itself and punishing *public* intoxication, which offends other citizens.[5] Thus, modern statutes prohibit intoxication in specific places, such as streets or alleys, or in "public places." *See* Annot., 8 A.L.R.3d 930 (1966).

Many states, including Indiana, have defined "public places" to mean a place where the public has a right to go or be. *E.g., State v. Sowers*, (1876) 52 Ind. 311. It "does not mean a place devoted solely to the uses of the public, but it means a place which is in point of fact public, as distinguished from private, a place that is visited by many persons and usually accessible to the neighboring public." R. Perkins, *supra* at 890. In so delimiting public intoxication, the statutes do "not apply to . . . conduct unless it obtrudes itself offensively on the attention of others." R. Anderson, Wharton's Criminal Law & Procedure § 1021, at 216 (1957).

The courts, in determining whether certain conduct "obtrudes itself offensively on the attention of others" and therefore occurs in a place which is "in point of fact public," have disagreed whether the curtilage of a private residence is a public place. *Compare State v. Sowers, supra* (front yard of private residence not a public place), *with People v. Olson*, (1971) 18 Cal.App.3d 592, 96 Cal.Rptr. 132 (lawn, driveway, and front porch of private residence a public place). The differing opinions appear a result of differing interpretations of the words "public place"; for example, Indiana defines it as a place where the public has a right to go or be, whereas California defines it as a place which is accessible to the public.

In the context of the public intoxication statutes, however, a place where the public has a right to go or be *includes* a place which is accessible to the public, even though the reverse may not necessarily be true. A California opinion recognizes that the hallway of an apartment building is a public place. *People v. Perez*, (1976) 64 Cal.App.3d 297, 134 Cal.Rptr. 338. Not only is the hallway of an apartment building accessible to the public, it is a place where the public has a right to go or be. Intoxicated persons, be they tenants of the building or guests of tenants, are not guests of the remaining tenants. These remaining tenants are part of the "public" and should not be compelled to tolerate drunkenness in close proximity to their abode.

This construction of "public" is consistent with those opinions saying that common areas of hotels are within the purview of the statute, but that private rooms within the hotel are not public. *Tackett v. Commonwealth*, (1953) Ky., 261 S.W.2d 298; *Lewis v. Commonwealth*, (1923) 197 Ky. 449, 247 S.W. 749; *Bordeaux v. State*, (1892) 31 Tex.Cr.R. 37, 19 S.W. 603. Just as the rooms within a hotel are private and the common entryways public, so the apartments within an apartment building are private and the common entryways public.

No Indiana case suggests that the law of this State flows against the mainstream of American legal thought. Courts of this State have taken the view that privately owned property generally is not a public

---

**3.** 4 Jac.I, c. 5 (Eng. 1606).

**4.** 4 Blackstone, Commentaries on the Laws of England *64.

**5.** In addition to public intoxication, habitual intoxication is punishable in some states. R. Perkins, *supra* at 891.

place, *State v. Tincher*, (1898) 21 Ind.App. 142, 51 N.E. 943, *State v. Sowers*, (1876) 52 Ind. 311, but it may be if the area is in point of fact made public. *Heichelbech v. State*, (1972) 285 Ind. 334, 281 N.E.2d 102 (service station). Various areas within an apartment complex may be a public place, depending upon their use.

*State v. Moriarty* (1881) 74 Ind. 103 is no bar to this conclusion. The holding in *Moriarity* is that an indictment which charged intoxication in a public street showed at least a prima facie case that the area was a public place; the indictment was not defective. Although the court did mention in dicta that the term "street" does not necessarily mean private ways or roads owned by private corporations, and cited cases dealing with assessments for improvements to privately owned roads, the court did not say that a privately owned road could never be a public place for purposes of the public intoxication statute. Again, privately owned areas may be used as public areas.

This is an age of high density population. Apartment dwellers who happen to be residents of homes connected by a common roof are not unlike multiple or single home dwellers abutting a public street, and should not be deprived of the protection of the public intoxication statute.[6]

I would affirm the convictions.

---

**6.** The need for the public intoxication statute is not diminished by the existence of the disorderly conduct statute, IC § 35–45–1–3. The disorderly conduct statute does not prohibit certain conduct which would be prohibited by the public intoxication statute if done in a public place while intoxicated. *See Hicks v. State*, (1973) 260 Ind. 204, 294 N.E.2d 613, *reh. denied*, 260 Ind. 204, 296 N.E.2d 431; *Miller v. State*, (1972) 258 Ind. 79, 279 N.E.2d 222.